# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN T. O'REILLY,<br>   Plaintiff,<br><br>v.<br><br>BJ'S WHOLESALE CLUB, INC.<br>   Defendant. | No. 3:16-CV-1351 (MPS) |

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff John T. O'Reilly brought this action against Defendant BJ's Wholesale Club, Inc. after suffering an eye injury while shopping at a BJ's Wholesale Club store. The parties have each moved for summary judgment with respect to Plaintiff's breach of contract and Connecticut Unfair Trade Practices Act ("CUTPA") claims.

For the reasons discussed below, I GRANT Defendant's motion for summary judgment and DENY Plaintiff's motion for summary judgment.

## I. FACTUAL BACKGROUND

Plaintiff, who is *pro se*, filed this lawsuit on August 9, 2016 and filed an Amended Complaint on November 30, 2016, asserting claims for breach of contract, negligence, violation of CUTPA, and including a count setting forth "class action allegations." (ECF No. 1; ECF No. 19.) On May 8, 2017, while Defendant's motion to dismiss the Amended Complaint was pending and the parties were conducting discovery, Plaintiff filed a motion for summary judgment on all of his claims. (ECF No. 35.)

The Court granted in part and denied in part Defendant's motion to dismiss, dismissing the negligence claim as time-barred but allowing Plaintiff's breach of contract and CUTPA claims to proceed. (ECF No. 37.) Defendant did not respond to Plaintiff's motion for summary judgment,

1

but filed its own motion for summary judgment on December 15, 2017. (ECF No. 44.) The following facts are taken from the parties' respective Local Rule 56(a) Statements and the exhibits. (ECF No. 35-2; ECF No. 46.) The facts are undisputed unless otherwise stated.

Plaintiff was a member of BJ's Wholesale Club when he went shopping at Defendant's North Haven store on August 8, 2014. (ECF No. 35-2 ¶¶ 1-2; ECF No. 46 ¶ 3.) While Plaintiff was checking out at the cash register, the cashier dropped two bottles of cleaning solution into the shopping cart in front of Plaintiff. (ECF No. 35-2 ¶ 2.) One of the bottles broke and splashed stain remover into Plaintiff's eyes and onto his face and clothes. (*Id.*) Chris Glenn, the store manager, typed up an accident report about the incident while Plaintiff sat on a bench in the store. (*Id.* ¶ 4.) Mr. Glenn promised to send Plaintiff a copy of the report. (*Id.*)

On August 23, 2014, Plaintiff returned to the store and asked Mr. Glenn why he had not yet received the accident report. (*Id.* ¶ 5.) Mr. Glenn responded that he was told by his superiors that he was not allowed to send a copy of the report to Plaintiff. (*Id.*) When Plaintiff asked why he had not received a letter informing him that he would not receive the report, Mr. Glenn apologized and promised to send the letter. (*Id.*) Plaintiff never received the letter. (*Id.* ¶ 6.) When Plaintiff returned to the store for a third time to ask why he had not received a letter, Mr. Glenn told Plaintiff that "he was just not allowed to." (*Id.*)

In the two years since the accident, Plaintiff has been to the emergency room several times as a result of falls caused by blurred vision. (*Id.* ¶ 7.) Plaintiff has fallen over half a dozen times up or down steps, causing injury to his right hip, knee, left foot, and back. (*Id.*) Plaintiff's ability to walk, eyesight, and heart have been adversely affected. (*Id.*)

Mr. Glenn stopped working for Defendant in January 2017. (*Id.* ¶ 8.) In an affidavit submitted in support of Plaintiff's motion for summary judgment, Mr. Glenn stated that he had in

fact created an accident report using his computer, and that the report was electronically sent to Defendant, but that he was never able to send Plaintiff a copy of the report. (ECF No. 36.)

A Membership Services Agreement ("the Agreement") in effect in August 2014 governed Plaintiff's relationship with Defendant at the time of the accident. (ECF No. 46 ¶ 11; *see also* ECF No. 45-1 at 6-8.) It is Defendant's internal and long-standing policy to use internal investigation reports to investigate claims of injury at its stores, and to decline to provide copies of internal investigation reports until the reports are requested during the discovery process of a lawsuit. (ECF No. 46 ¶¶ 8-9.) Plaintiff did not request a copy of the incident report during discovery in this lawsuit. (*Id.* ¶ 10.)

## II. LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (internal quotation marks and citations omitted). "In making that determination, a court must view the evidence in the light most favorable to the opposing party." *Id.* (quotation marks omitted). On summary judgment a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted).

### III. DISCUSSION

#### A. Breach of Contract

Plaintiff claims that Defendant's conduct breached "the express terms" of an agreement between the parties. (ECF No. 19 ¶ 16.) To prevail on a breach of contract claim, a plaintiff must prove formation of an agreement, performance by one party, breach of the agreement by the other party, and damages. *Meyers v. Livingston, Adler, Pulda, Meiklejohn and Kelly, P.C.*, 311 Conn. 282, 291 (2014). "It is hornbook law that to be entitled to damages in contract a plaintiff must establish a causal relation between the breach and the damages flowing from that breach." *Calig v. Schrank*, 179 Conn. 283, 286 (1979). *See also Meadowbrook Ctr., Inc. v. Buchman*, 149 Conn. App. 177, 186 (2014) ("[P]roof of causation . . . is . . . part and parcel of a party's claim for breach of contract damages."). Construing Plaintiff's pleadings liberally, I consider whether Plaintiff may maintain his breach of contract claim based either on the accident itself or on Defendant's refusal to provide Plaintiff with the incident report following the accident.

Regardless of whether Plaintiff's breach of contract claim is based on the accident or Defendant's refusal to provide Plaintiff with the incident report, Plaintiff has not established breach of any provision of the Membership Services Agreement, which governed his relationship with Defendant at the time of the incident. The Agreement contains no provision establishing a card member's right to receive an incident report following an accident in a BJ's Wholesale Club store—or for that matter, any provision related to incident reports. (*See* ECF No. 45-1 at 6-8.) Nor does it contain any provision regarding the handling of items by store personnel in the checkout

line. Plaintiff also does not point to any provision of the Agreement that applies to this case or argue that another agreement governed his membership with BJ's Wholesale Club. Plaintiff has therefore failed to establish that Defendant's conduct breached "the express terms" of the Agreement.

Plaintiff also alleges that Defendant breached an agreement with Plaintiff by "fail[ing] to employ reasonable and appropriate measures to protect the safety of [Defendant's] customers while shopping." (ECF No. 19 ¶ 15.) The record contains no agreement between the parties that required Defendant to use "reasonable and appropriate measures to protect the safety of . . . customers while shopping," or otherwise governed the safety measures used in Defendant's stores.[1] Plaintiff's breach of contract claim therefore fails to the extent it is based on Defendant's alleged failure to use "reasonable" measures to protect customer safety.[2]

Plaintiff's breach of contract claim also fails to the extent it is based on store manager Glenn's promise to send Plaintiff a copy of the incident report. (*See* ECF No. 35-1 at 2 ("Mr. Glenn promised to send Plaintiff O'Reilly a copy of [the incident] report.").)[3] "To be enforceable, a contract must be supported by valuable consideration." *Conn. Nat. Bank v. Voog*, 233 Conn. 352, 366 (1995). A breach of contract claim therefore fails in the absence of "performance by or promises from a plaintiff." *Santiago v. Butler Co.*, No. 3:08-CV-1297 (CSH), 2012 WL 527699, at *5 (D. Conn. Feb. 17, 2012) (holding that plaintiff alleged only a unilateral promise, rather than a mutually binding oral contract, as plaintiff did not allege that he gave any consideration for the

---

[1] By alleging that Defendant "fail[ed] to employ reasonable and appropriate measures to protect the safety of [its] customers while shopping," Plaintiff also appears to assert a negligence claim, which the Court has already dismissed as time-barred. (ECF No. 37 at 10-12.)
[2] To the extent that Plaintiff's amended complaint pleads both a breach of contract claim and a claim for breach of the implied covenant of good faith and fair dealing, I address the latter below.
[3] Mr. Glenn attests in his affidavit that he "may have said that [he] would get Mr. O'Reilly a copy [of the report] after a copy was not printed out at the incident." (ECF No. 36 ¶ 6.)

promise or perform any duties required by it). The record contains no evidence that Plaintiff gave anything of value or performed any duties in exchange for Glenn's promise to send the report. Rather, in his affidavit, he states that "Mr. Glenn had [him] sit on a bench while Mr. Glenn typed up an accident report of the incident," and that "Mr. Glenn promised to send [Plaintiff] a copy of this report." (ECF No. 47 ¶ 4.) Therefore, no mutually binding agreement formed between the parties. At most, Glenn's statement that he would send Plaintiff a copy of the report was a unilateral promise that imposed no duty on Defendant to perform.

Plaintiff's breach of contract claim also fails because Plaintiff has not established damages *caused by* Defendant's failure to provide him with the incident report. To be sure, Plaintiff has submitted evidence that the splashing of chemical stain remover into his eyes caused him damages. (*See* ECF No. 19-1; ECF No. 45-2 at 48-76.) At least for the purposes of summary judgment, Defendant does not dispute that Plaintiff suffered these injuries.

There is no evidence in the record, however, that Defendant's refusal to provide Plaintiff with the incident report prior to discovery caused or exacerbated these injuries. Plaintiff has not demonstrated that his alleged damages—injuries resulting from blurred vision and falls, medical expenses, missed work days, and lost income—were caused by the refusal to provide the incident report prior to the discovery process or by any other breach of an agreement. The record does reflect, however, that Plaintiff retained a lawyer who tried to negotiate a settlement on his behalf (ECF No. 45-1 at 10-13) and later filed a lawsuit on his own to recover damages for his injuries, all without the report in hand. The record also shows that Plaintiff then failed to request the report in discovery. Even viewing the facts in the light most favorable to Plaintiff, I find that there is no evidence in the record from which a reasonable juror could conclude that Defendant's failure to provide Plaintiff with the incident report following his accident caused Plaintiff any harm.

Summary judgment is therefore appropriate on Plaintiff's breach of contract claim. *See, e.g.*, *Davis v. Conn. Comm. Bank, N.A.*, 937 F. Supp. 2d 217, 229-30 (D. Conn. 2013) (granting summary judgment to defendant on plaintiff's breach of contract claim where the plaintiff failed to "establish[] damages directly and proximately caused by the alleged breach").

I GRANT Defendant's motion for summary judgment and DENY Plaintiff's motion for summary judgment on Plaintiff's breach of contract claim.

**B. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Construing Plaintiff's pleadings liberally to raise the strongest arguments they suggest, I also consider whether Plaintiff provides evidence to support a claim for breach of the implied covenant of good faith and fair dealing.

To prevail on a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove three elements: "first, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits he reasonably expected to receive under the contract, the defendant was acting in bad faith." *Wurtzebach v. Henderson Glob. Inv'rs (N. Am.), Inc.*, No. 3:09CV366 (AWT), 2011 WL 13233773, at *2 (D. Conn. Nov. 17, 2011) (quoting *Franco v. Yale Univ.*, 238 F. Supp. 2d 449, 455 (D. Conn. 2002)). The implied covenant of good faith and fair dealing "is not implicated by conduct that does not impair contractual rights." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 795 (2013).

As discussed above, because the Agreement contains no provision related to customer safety, incident reports, or customers' rights following an accident in a BJ's Wholesale Club store,

neither Defendant's handling of the bottles of cleaner nor Defendant's refusal to provide the incident report following Plaintiff's accident injured Plaintiff's right to receive any benefits under the Agreement. Further, because Glenn's promise to Plaintiff did not create a duty for Defendant to provide the incident report, Plaintiff had no right to receive any benefits as a result of Glenn's promise.

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing also fails because there are no facts in the record that demonstrate that Defendant acted in bad faith either in handling items at the store or in declining to provide Plaintiff with the incident report. In the context of a claim for breach of the covenant of good faith and fair dealing, "[b]ad faith means more than mere negligence; it involves a dishonest purpose." *Geysen v. Securitas Sec. Servs. USA, Inc.*, 322 Conn. 385, 399 (2016) (internal citation omitted).

As to the accident itself, there is no evidence suggesting that Defendant acted in bad faith in its handling of the bottles of chemical stain remover that splashed into Plaintiff's eyes and face. At most, the record shows that a cashier's negligence caused the accident.

As to Defendant's refusal to provide the incident report, Plaintiff argues that Defendant "engaged in misleading injured customers, inviting them to provide personal and confidential medical records and information only to dissuade members from taking legal action and belittling their injuries as minimal and basically [a] nuisance . . . ." (ECF No. 47 ¶ 4.) But Plaintiff submits no evidence suggesting that he was misled or that his injuries were belittled, or that anyone attempted to dissuade him from "taking legal action," an attempt that, if it occurred, was in any event unsuccessful. Further, Plaintiff has not put forth any evidence that Defendant declined to provide him with the incident report for a dishonest purpose. Plaintiff does not dispute that Defendant has a longstanding policy of declining to provide copies of internal investigation reports

until the reports are requested during the discovery process of a lawsuit. (ECF No. 46 ¶ 9.) Plaintiff also does not dispute that Defendant's claims adjusters communicated with Plaintiff and his former counsel to settle his claim before Plaintiff filed this lawsuit. (ECF No. 45-1 at 3 ¶ 8; *see also id.* at 10-13.) Defendant also represents that it "was prepared to comply with its internal policy . . . had Plaintiff actually made a request that Defendant do so . . . ." (ECF No. 45 at 15.) As noted, Plaintiff did not request production of the report during discovery. (*Id*. ¶ 10.)[4] Plaintiff provides no evidence that Defendant's adherence to its policy of not providing incident reports except during the discovery process after a lawsuit is filed was motivated by a dishonest purpose.

Therefore, I GRANT Defendant's motion for summary judgment and DENY Plaintiff's motion for summary judgment on Plaintiff's claim for breach of the covenant of good faith and fair dealing.

## C. CUTPA

Plaintiff also claims that Defendant's refusal to provide him with the incident report following his accident violated the CUTPA. Plaintiff attests that he suffered "ascertainable losses relating to physical and bodily injuries as a result of the actions of the Defendant[] and splashing oxyclean cleaning solution into [his] face and eyes, causing [him] to take multiple falls which

---

[4] Plaintiff argues that he "did request a copy of [the] internal incident report," as evidenced by his former attorney Kenneth R. Davis's correspondence with Defendant and the interrogatories he served during discovery. (ECF No. 47 ¶ 9; ECF No. 45-1 at 10-13; ECF No. 45-2 at 78-86.) Attorney Davis's correspondence, which included a demand for the report, does not establish that Plaintiff was entitled to the report, given Defendant's internal policy of not providing reports until they are requested *during discovery*. Plaintiff's interrogatories—at least those Defendant attaches to its motion for summary judgment—do not include a request for the report, and would not be a proper vehicle for requesting production of a document during discovery. *See* Fed. R. Civ. P. 33-34 (describing the respective procedures for interrogatories and for requesting copies of documents during discovery); *Collins v. Experian Credit Rep't Serv.*, No. 3:04CV1905 (MRK), 2006 WL 2850411, at *1 (D. Conn. Oct. 3, 2006) ("[P]ro se parties are not excused from abiding by the *Federal Rules of Civil Procedure*."). Plaintiff has submitted no evidence suggesting he requested the report in discovery.

9

ended up causing a fracture in [his] hip and hospitalization." (ECF No. 47 ¶ 8.) Plaintiff argues that Defendant "made it a policy to take injured parties and interrogate them so as to construct a report without telling these innocent victims that they were not going to receive a copy of the report and the report was only to be used for BJ's purposes." (*Id*. ¶ 4.)

CUTPA prohibits the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). The statute provides a private right of action for "[a]ny person who suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice" prohibited by CUTPA. *Id*. § 42-110g.

A plaintiff bringing a CUTPA claim must show that "(1) the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce; . . . and (2) [he] has suffered an ascertainable loss of money or property as a result of the defendant's acts or practices." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 217 (2008).

To determine whether a defendant has engaged in an "unfair or deceptive act or practice," Connecticut courts have adopted the criteria known as the "cigarette rule" and consider "(1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise . . . (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers, competitors or other businesspersons." *Am. Car Rental, Inc. v. Comm. of Consumer Prot.*, 273 Conn. 296, 305-06 (2005) (alterations omitted). Courts have found allegations of negligence to be insufficient to support a finding that a practice was unfair or deceptive for the purpose of a CUTPA claim. *See A-G Foods, Inc. v. Pepperidge Farm, Inc.*, 216 Conn. 200, 217 (1990) (reversing jury award on CUTPA claim because defendant's "negligence did not constitute an 'immoral, unethical, oppressive, or unscrupulous' practice"); *Bentley v. Greensky Trade Credit,*

*LLC*, 156 F. Supp. 3d 274, 289 (D. Conn. 2015) (finding that proposed CUTPA claim would be futile, as the facts asserted alleged "[m]ere negligence").

Plaintiff's CUTPA claim—to the extent it is based on Defendant's handling of items in the store and the accident—fails because it is based entirely on allegations of negligence. Plaintiff provides no evidence that the accident itself—as distinct from Defendant's refusal to provide the incident report—involved any practice that "offends public policy," is "immoral, unethical, oppressive, or unscrupulous," or "causes substantial injury to consumers."

The CUTPA claim also fails because Plaintiff has not demonstrated that Defendant's conduct in refusing to provide the incident report caused him to suffer an "ascertainable loss"—or any harm at all. While "the ascertainable loss provision does not require a plaintiff to prove a specific amount of actual damages in order to make out a prima facie case . . . . a plaintiff still must marshal *some* evidence of ascertainable loss in support of [his] CUTPA allegations, and a failure to do so is indeed fatal to a CUTPA claim on summary judgment." *Marinos v. Poirot*, 308 Conn. 706, 713-14 (2013) (internal quotation marks, citations, and alterations omitted) (emphasis in original) (affirming summary judgment on CUTPA claim where plaintiff failed to identify any evidence of ascertainable loss); *see also Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 238 (2d Cir. 1998) (same).

While a CUTPA plaintiff may survive summary judgment by submitting affidavits or other documentary evidence of ascertainable loss, *Marinos*, 308 Conn. at 717, the affidavits and documents Plaintiff submitted do not establish a genuine issue of material fact as to whether Defendant's practice caused him any loss of money or property. Plaintiff has not submitted evidence showing that having the incident report in his possession would have improved the claims settlement process for him, would have impacted his medical expenses, or would have reduced his

lost income. Because Plaintiff fails to provide evidence that Defendant's refusal to provide him with an incident report caused him an ascertainable loss, an essential element of a CUTPA claim, Plaintiff's CUTPA claim fails.

I DENY Plaintiff's motion for summary judgment and GRANT Defendant's motion for summary judgment on Plaintiff's CUTPA claim.

## IV. CONCLUSION

For the reasons stated above, I DENY Plaintiff's motion for summary judgment. I GRANT Defendant's motion for summary judgment.[5]

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
March 15, 2018

---

[5] Plaintiff labeled his "Class Action Allegations" as "Count Three" in the Amended Complaint. (ECF No. 19 ¶¶ 26-41.) As the Court noted in its ruling on the motion to dismiss, such allegations are not a distinct legal cause of action. (ECF No. 37 at 12.) Therefore, without a remaining claim, these allegations do not entitle Plaintiff to any relief.